Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC CAMPBELL,<br><br>   Plaintiff,<br><br>   v.<br><br>SOC TELEMED, INC., STEVEN J. SHULMAN, JOSEPH P. GRESKOVIAK, CHRIS GALLAGHER, BARBARA P. BYRNE, THOMAS J. CARELLA, GYASI C. CHISLEY, AMR KRONFOL, and ANNE M. MCGEORGE,<br><br>   Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Eric Campbell ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1. This is an action against SOC Telemed, Inc. ("SOC Telemed" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of SOC Telemed by Patient Square Capital ("Patient Square").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of SOC Telemed common stock.

7.  Defendant SOC Telemed provides acute care telemedicine services and technology to hospitals, health systems, physician groups, and government organizations in the

United States. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "TLMD."

8. Defendant Steven J. Shulman ("Shulman") is Chairman of the Board of the Company.

9. Defendant Joseph P. Greskoviak ("Greskoviak") is Vice Chairman of the Board of the Company.

10. Defendant Chris Gallagher ("Gallagher") is Chief Executive Officer and a director of the Company.

11. Defendant Barbara P. Byrne ("Byrne") is a director of the Company.

12. Defendant Thomas J. Carella ("Carella") is a director of the Company.

13. Defendant Gyasi C. Chisley ("Chisley") is a director of the Company.

14. Defendant Amr Kronfol ("Kronfol") is a director of the Company.

15. Defendant Anne M. McGeorge ("McGeorge") is a director of the Company.

16. Defendants Shulman, Greskoviak, Gallagher, Byrne, Carella, Chisley, Kronfol, and McGeorge are collectively referred to herein as the "Individual Defendants."

17. Defendants SOC Telemed and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. On February 3, 2022, SOC Telemed announced that it had entered into a definitive agreement to be acquired by Patient Square for $3.00 in cash per share of Class A common stock. The press release announcing the Proposed Transaction states, in pertinent part:

3

## SOC Telemed to be Acquired by Patient Square Capital

- SOC Telemed stockholders to receive $3.00 per share in cash

- Partnership enables continued growth and expansion of leading US provider of acute care telemedicine

NEWS PROVIDED BY
**SOC Telemed**
Feb 03, 2022, 07:00 ET

HERNDON, Va., Feb. 3, 2022 /PRNewswire/ -- SOC Telemed, Inc. (NASDAQ: TLMD) (the "Company" or "SOC Telemed"), the largest national provider of acute care telemedicine, today announced that it has entered into a definitive agreement to be acquired by Patient Square Capital ("Patient Square"), the leading dedicated health care investment firm.

Under the terms of the agreement, SOC Telemed stockholders will receive $3.00 in cash per share of Class A common stock ("the common stock"). The per share purchase price represents a premium of approximately 366.1% over SOC Telemed's closing share price on February 2, 2022, the last full trading day prior to the transaction announcement and a 93.1% premium to SOC Telemed's sixty-day volume-weighted average price (VWAP) through February 2, 2022.

The Board of Directors of SOC Telemed (the "Board"), having determined that the transaction is in the best interests of the Company's stockholders, has unanimously approved the transaction and recommends that Company stockholders approve the transaction and adopt the merger agreement at the Special Meeting of Stockholders to be called in connection with the transaction. Stockholders collectively holding approximately 39% of the outstanding shares of common stock have entered into a voting agreement pursuant to which they have agreed, among other things, to vote their shares of the Company's common stock in favor of the transaction.

\*   \*   \*

Following the completion of the transaction, SOC Telemed will continue to be led by Dr. Chris Gallagher, Chief Executive Officer, who assumed the role of CEO in September of 2021. Dr. Gallagher was previously Co-Founder and CEO of Access Physicians, a high growth and experienced multi-specialty acute care telemedicine business that was acquired by SOC Telemed in March of 2021.

\*   \*   \*

**Transaction Details**

The agreement includes a 30-day "go-shop" period, which allows the SOC Telemed Board of Directors and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties. The SOC Telemed Board of Directors will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and SOC Telemed does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required. Following the expiration of the go-shop period, SOC Telemed will be subject to customary "no-shop" restrictions on its ability to solicit acquisition proposals from third parties or to provide information to and engage in discussions with any third parties in relation to an alternative acquisition proposal, subject to customary exceptions that permit the SOC Telemed Board of Directors to comply with its fiduciary duties.

The transaction is expected to close in the second quarter of 2022, subject to the satisfaction or waiver of customary closing conditions, including the approval by SOC Telemed stockholders and receipt of Hart-Scott Rodino antitrust approval in the U.S. Upon closing of the transaction, SOC Telemed's common stock will no longer be listed on any public market.

*   *   *

**Advisors**

William Blair is acting as exclusive financial advisor to SOC Telemed, Orrick, Herrington & Sutcliffe LLP is acting as deal legal counsel to SOC Telemed and DLA Piper LLP is acting as healthcare legal counsel to SOC Telemed. Kirkland & Ellis LLP is acting as deal legal counsel to Patient Square Capital and Latham & Watkins LLP is acting as healthcare legal counsel to Patient Square Capital.

**About SOC Telemed**

SOC Telemed ("SOC") is the leading national provider of acute telemedicine technology and solutions to hospitals, health systems, post-acute providers, physician networks, and value-based care organizations since 2004. Built on proven and scalable infrastructure as an enterprise-wide solution, SOC's technology platform, Telemed IQ, rapidly deploys and seamlessly optimizes telemedicine programs across the continuum of care. SOC provides a supportive and dedicated partner presence, virtually delivering patient care through teleNeurology, telePsychiatry, teleCritical Care, telePulmonology, teleCardiology, teleInfectious Disease, teleNephrology, teleMaternal-Fetal Medicine and other service lines, enabling healthcare organizations to build sustainable telemedicine programs across clinical specialties. SOC enables organizations to enrich their care models and touch more lives by supplying healthcare teams with industry-leading solutions that drive improved clinical care, patient outcomes, and organizational

5

health. The company was the first provider of acute clinical telemedicine services to earn The Joint Commission's Gold Seal of Approval and has maintained that accreditation every year since inception. For more information, visit www.soctelemed.com.

**About Patient Square Capital**

Patient Square Capital is a dedicated health care investment firm that partners with best-in-class management teams whose products, services and technologies improve health. We utilize our deep industry expertise, our broad network of relationships and a true partnership approach to make investments in companies that will grow and thrive. We believe in the power these companies have to improve patient lives, strengthen communities and create a healthier world. Patient Square is purpose built by a team of industry-leading executives, differentiated by the depth of our focus in health care, the breadth of our health care investing experience, and the network we can activate to drive differentiated outcomes. Most importantly, patients are squarely at the center of all that we do. For more information, visit www.patientsquarecapital.com.

19. On March 7, 2022, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20. The Proxy Statement, which recommends that SOC Telemed shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) SOC Telemed's financial projections; (ii) the financial analyses performed by SOC Telemed's financial advisor, William Blair & Company, L.L.C. ("William Blair"), in connection with its fairness opinion; (iii) potential conflicts of interest involving William Blair; and (iv) the sales process leading up to the Proposed Transaction.

21. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Company Board and Reasons for the Merger; (iii) Opinion of William Blair & Company, L.L.C.; and (iv) Management Forecasts.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the April 4, 2022 shareholder vote on the Proposed Transaction, SOC Telemed shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning SOC Telemed's Financial Projections

23. The Proxy Statement omits material information concerning SOC Telemed's financial projections.

24. With respect to SOC Telemed's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) SOC Telemed's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of SOC Telemed and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

27. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning William Blair's Analyses

28. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by William Blair.

29. With respect to William Blair's "*Selected Public Companies Analysis*" and "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction William Blair observed in its analyses.

30. The Proxy Statement fails to disclose the following concerning William Blair's "*Discounted Cash Flow Analysis*": (1) the Company's projected future free cash flows for the fiscal years ending December 31, 2022, through December 31, 2026, and all underlying line items; (2) the terminal value of the Company; (3) the individual inputs and assumptions underlying the (i) terminal multiples ranging from 1.5x-2.5x, and (ii) discount rates ranging from 14.0% to 16.0%;

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 10, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

(4) the Company's senior management's latest estimate of net debt as of December 31, 2021; and

(5) the Company's total diluted shares outstanding as of December 31, 2021.

31. With respect to William Blair's "*Leveraged Buyout Analysis*," the Proxy Statement fails to disclose the individual inputs and assumptions underlying the (i) target range of annualized internal rates of return from 15.0% to 25.0% for a potential investor, (ii) range of debt financing of $0 to $100 million, and (iii) range of CY 2027E revenue multiples of 1.5x to 2.5x.

32. With respect to William Blair's "*M&A Premiums Paid Analysis*," the Proxy Statement fails to disclose the premiums paid in William Blair's "*Selected Precedent Transactions Analysis*."

33. The valuation methods, underlying assumptions, and key inputs used by William Blair in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of William Blair's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

34. Without the information described above, the Company's shareholders are unable to fully understand William Blair's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Potential Conflicts of Interest Involving William Blair**

35. The Proxy Statement omits material information concerning potential conflicts of interest involving William Blair.

36. The Proxy Statement fails to disclose the timing and nature of the past services that William Blair and/or its affiliates provided to Patient Square and/or its affiliates, including the

9

amount of compensation William Blair received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

37. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

38. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

   **4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

39. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Proxy Statement provides that, "[o]n January 20, 2022, Party C entered into a confidentiality agreement with the Company to facilitate Party C's exploration of a potential acquisition of the Company." The "confidentiality agreement included customary confidentiality restrictions and restrictions on the use of non-public information of the Company and contained a standstill obligation."

41. The Proxy Statement, however, fails to disclose all the terms of the Company's confidentiality agreement with Party C, including whether the agreement contained a "don't ask, don't waive" (DADW) provision (including its time of enforcement) that would preclude Party C from making a superior offer for the Company.

42. Without this information, the Company's shareholders may have the mistaken

belief that Party C is or was permitted to submit superior proposals for the Company, when in fact it may be contractually prohibited from doing so. This information is material because a reasonable SOC Telemed shareholder would want to know, prior to voting for or against the Proposed Transaction, whether Party C is or was foreclosed from submitting a superior proposal.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

47. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote

on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 10, 2022　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　**HALPER SADEH LLP**

　　　　　　　　　　　　　　　　　　　　　　　By: /s/ Daniel Sadeh
　　　　　　　　　　　　　　　　　　　　　　　Daniel Sadeh, Esq.
　　　　　　　　　　　　　　　　　　　　　　　Zachary Halper, Esq. (to be admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　667 Madison Avenue, 5th Floor
　　　　　　　　　　　　　　　　　　　　　　　New York, NY 10065
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 763-0060
　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (646) 776-2600
　　　　　　　　　　　　　　　　　　　　　　　Email: sadeh@halpersadeh.com
　　　　　　　　　　　　　　　　　　　　　　　　　　　　zhalper@halpersadeh.com

　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*